# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FRANCISCO RODRIGUEZ, | ) | 1:09cv1912 GSA |
| | ) | |
| | ) | ORDER REGARDING PLAINTIFF'S |
| Plaintiff, | ) | SOCIAL SECURITY COMPLAINT |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) | (Doc. 22) |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**BACKGROUND**

Plaintiff Francisco Rodriguez ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

///

///

///

---

[1] Both parties consented to the jurisdiction of the Magistrate Judge. *See* Docs. 11 and 14.

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed his initial applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits on November 13, 2006, alleging disability since April 1, 2002.[3] AR 136-148. His applications were denied initially and on reconsideration. AR 82-86. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 108. ALJ Patricia Leary Flierl held a hearing on October 1, 2008, and denied benefits on March 26, 2009. AR 9-68. On September 25, 2009, the Appeals Council denied review. AR 1-4 .

Hearing Testimony

An administrative hearing was held on October 1, 2008, in Fresno, California. AR 17-68. Plaintiff appeared with his attorney, Ms. Melissa Proudian. AR 19. Vocational Expert (VE) Susan Miranda also testified. AR 55-66.

At the time of the hearing, Plaintiff was 45-years old. He lived with his wife and two children, ages 14 and 10. AR 23. Plaintiff also has another child and three grandchildren who do not live with him. AR 23. Plaintiff has a GED and is attending community college. AR 25. He is majoring in family therapy and his courseload is currently 12 units. AR 25. He attends classes four times per week for approximately 15 hours per week and has "a lot of homework." AR 27. While at school, Plaintiff sits in class for one hour and then takes a ten to fifteen minute break to stand or walk. AR 27.

With regard to the daily activities of living, Plaintiff cooks three times a week, drives himself to school, washes the dishes daily, and grocery shops with his wife. AR 24, 50-51. He believes he is not able to work full-time due to pain in his lower back, right arm, and hand. AR 28. He also suffers from depression. AR 28.

The back pain began in 2002 after he hurt his back working as an assembler in 2001. AR 28-29. Plaintiff applied for Workers' Compensation and settled the case for $5,000.00.[4] Since

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

[3] Plaintiff previously applied for SSI and disability benefits on October 4, 2004. AR 71. These applications were denied by Administrative Law Judge Stephen Webster on September 21, 2006. AR 69- 78.

[4] This amount includes attorney fees.

the accident, he has continuing back pain which occurs once or twice a week, and lasts for 10 minutes. AR 30.  Plaintiff treats his back pain with over-the-counter pain relievers and exercise. AR 33.  For exercise, Plaintiff walks a half mile, but needs to take a break half way through.  AR 33-34.  Plaintiff also does modified push ups.  AR 33.  He engaged in physical therapy in the past, but has not participated in therapy since 2003.  AR 40.  He also currently uses a TENS unit approximately one hour a day to help to relieve the pain.  AR 40-41.

Plaintiff is unable to sit for longer than one hour and can only stand for 20 minutes.  AR 31-32.  He is able to continue standing if he takes a break for five minutes.  AR 32.  He is also able to briefly lift his 22 pound grandchild with both hands, if she is on a high level surface.  AR 32.  However, he is only able to lift a water jug weighing three to five pounds for approximately five to ten minutes with his right hand.  AR 32, 44.

Plaintiff had surgery on his right hand in January of 2007 to remove a "bump. " AR 42. However, he still experiences pain from his right wrist to his elbow which gets worse when doing repetitive activity.  AR 42-43.  He also has numbness on his fingers tips.  AR 44. Notwithstanding the above,  Plaintiff can reach his arm in front of himself at shoulder height without difficulty.  AR 37.  He is also able to open and close his right hand and use his right hand for fine motor activities such as opening a lock with a key, but he has problems with grasping. AR 43-45.

At school,  Plaintiff can write with his right hand for twenty to forty minutes but then needs to take a break.  AR 38.  Similarly, he is able to type for ten to fifteen minutes but then stops for ten to fifteen minutes.  AR 38.

Plaintiff has suffered from depression for the past eight months which has improved after he began taking Lexapro. AR 46.  However, he still continues to cry everyday and he has difficulty concentrating and is easily distracted.  AR 47, 49.  He has had suicidal thoughts in the past, but those have subsided since taking the medication.  AR 47-48.  He sometimes has difficulty sleeping during the night, but he is able to sleep about six hours when he takes Lorazepam.  AR 25.  He naps five days a week for twenty to forty minutes.  AR 36.

Plaintiff has held several jobs in the past. From 1989 through 1995, Plaintiff worked as a furniture coordinator/loader at Gottschalks. AR 56-57. From 1995 to 2002, he worked as an assembler/laborer and drove a forklift at an air conditioning company. AR 60. In 2003, he worked as a home inspector. AR 59. In 2006, he worked as a manager for a garden service for 40 hours a week. AR 60. From December 2007 until July 2008, Plaintiff also worked as a sales representative. AR 53, 61. Plaintiff had to quit the last position because the job required driving long distances. AR 53-54. He has not worked since 2008, but he has applied for jobs such as a clerk and counselor at a prison. AR 46-47, 55. Plaintiff has lifetime certifications in air conditioning and heating, as well as in home inspections. AR 26, 63.

Susan Miranda the VE also testified. AR 56-66. The ALJ asked the VE to assume a person of Plaintiff's age, education, who could lift 20 pounds occasionally and 10 pounds frequently, who could stand and walk in combination for six hours, who could sit for six hours, and who could frequently climb, balance, kneel, crouch, and crawl, but is limited to frequent fine and gross manipulation with the right hand. AR 63-64. The VE testified that Plaintiff would not be able to perform his past work as a furniture loader or forklift driver, but he could perform work as a manager, and sales assistant. AR 64. The VE testified that Plaintiff would also be capable of working as a cashier and as an office helper. AR 64.

The VE was asked to assume the characteristics of the same individual listed above except that the individual is limited to occasional fine and gross manipulation with the dominant right hand. The VE testified that this individual could not perform Plaintiff's past relevant work or any other work. AR 65.

The ALJ also asked the VE to assume an individual who could lift and carry five pounds with the right hand and up to twenty pounds with both hands, the individual could stand, sit, and walk up to six hours but requires a sit/stand option, the individual could not climb, balance, kneel, crouch, crawl or stoop and is unable to push and pull. The individual could not reach above the shoulder level with the right arm, and is limited to frequent gross and fine manipulation with the right hand. AR 65. The VE testified that such an individual would be capable of working as a charge account clerk and an information clerk.

Medical Record

From November 2006 until January 2007, Plaintiff was treated at the University Medical Center and the Riverside Medical Center in Madera, California. He was examined intermittently for back pain and a growth on his right hand which was diagnosed as Dupuytren Fasciitis. AR 14, 244-251; 222-224, 229-233, 246-247. X-rays performed on December 13, 2006 of his right hand were normal. AR 234. However, in January 2007, Plaintiff underwent a partial palmer fasciectomy at the University Medical Center. AR 244, 248.

On January 30, 2007, Plaintiff was evaluated by consultative examiner, Tahir Hassan, M.D., at the request of the state agency. Plaintiff complained of back and right hand pain and was diagnosed with chronic back pain and right hand pain status post surgery. AR 218. Dr. Hassan noted that Plaintiff was in no acute distress and did not walk with an assistive device. AR 219. He further noted that Plaintiff had no edema in his extremities, had good muscle tone, 5/5 grip strength in his upper and lower extremities, except for 4/5 in his right hand due to a scar on his palm with sutures. AR 219. Dr. Hassan opined Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently and he could sit, stand and/or walk for approximately six hours in an eight hour day. AR 220. Dr. Hassan also determined Plaintiff could frequently climb, balance, kneel, crouch, stoop, and could frequently handle, grasp, and feel with the right hand "due to recent hand surgery." AR 220.

On February 7, 2007, Plaintiff was examined at the Riverside Medical Clinic and reported that he felt fine after surgery, but continued to complain of intermittent back pain. AR 222.

On February 8, 2007, a non-examining state agency medical consultant determined Plaintiff was able to lift and carry twenty pounds occasionally and ten pounds frequently, and he could sit, stand, and or walk six hours out of an eight hour day. He could also occasionally handle, twist, and finger with the right hand. AR 235-239.

From January 2008 to October 2008, Plaintiff was treated for depression and stiffness in his right hand at Riverside Medical Center. AR 260, 261, 265, 268-269. Plaintiff was also seen by Raquel Espinoza, a licensed social worker from February 7, 2008 until September 29, 2008,

for depression. AR 270- 349.[5] Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, and participated in individual and marital counseling. AR 271, 276-288, 292-300, 304-308, 312- 322, 325, 327-328, 330-334, 346. Plaintiff was prescribed Lexapro to treat his depression. AR 302.

X-rays performed on June 4, 2008, of Plaintiff's left shoulder were within normal limits. AR 254. Similarly, x-rays done of Plaintiff's lumbosacral spine performed in June 2008 were also unremarkable.[6] AR 255.

ALJ's Findings

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since April 1, 2002. AR 11. The ALJ opined that Plaintiff suffered from severe impairments including chronic low back pain secondary to cervical degenerative disc disease and disc bulges, right hand dupuytren fasciitis, and status post partial palmer fasciectomy. Nonetheless, she found that these severe impairments did not meet or equal any listing impairments resulting in a disability finding. A.R. 13. Based on his review of the medical evidence, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and carry twenty pounds occasionally and ten pounds frequently, can sit, stand, and/or walk for six hours in and eight hour day, and can frequently climb, balance, kneel, crouch, crawl, stoop, and perform fine or gross manipulation with the dominant right hand. AR 13.

Considering that functional limitations, the ALJ found that Plaintiff was able to perform his past relevant work as a retail manager and sales assistant. AR 14. The ALJ also applied the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpt. P, App. 2 in conjunction with the Plaintiff's RFC, age, educational experience and determined that Plaintiff was capable of

---

[5] Although all pages of the administrative record are cited in sequential order, it is noted every other page of the record in this section of the record is illegible. However, as explained in section B, *infra*, the illegible pages do not contain missing information, but instead are duplicative copies of the records already in the record.

[6] It is noted that the ALJ refers to an MRI completed in 2002 of Plaintiff's cervical spine which indicated degenerative disk disease. AR 14. The ALJ obtained this information from a decision issued by Administrative Law Judge Stephen Webster on September 21, 2006. However, these medical records do not appear in the current record. AR 74.

6

performing a significant number of jobs in the national economy. AR 15. Based on these factors, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act. AR 16.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, the Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. See *Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f).  Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since April 1, 2002; (2) had severe impairments including chronic low back pain secondary to cervical degenerative disc disease and disc bulges, right hand dupuytren fasciitis, and status post partial palmer fasciectomy; (3) did not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR §§ 416.1526, 416.925 and 416.926); (4) had a residual functional capacity to lift and carry twenty pounds occasionally and ten pounds frequently, can sit, stand and/or walk for six hours in an eight hour day, and can frequently climb, balance, crouch, crawl, stoop, and perform fine or gross manipulation with the dominant right hand; and (5) that he can perform his past relevant work as a sales assistant and retail manager. AR 11-14.  Additionally, the ALJ determined that significant numbers of jobs exist in the national economy which Plaintiff can also perform.  AR 15.

In reaching these conclusions, the ALJ determined that Plaintiff's was not entirely credible. AR 13.   Plaintiff contends that this credibility determination is erroneous.  Plaintiff also argues that the administrative record is incomplete.

## DISCUSSION

*Credibility*

Plaintiff contends that the ALJ incorrectly formulated the RFC by rejecting his subjective pain testimony.  In particular, Plaintiff opines that the ALJ improperly relied upon the objective medical evidence, and that her analysis of his daily activities was incorrect.  Accordingly, Plaintiff contends that his testimony reveals that he is unable to perform full-time continuous work. Defendant argues that the ALJ's credibility finding was proper.

The ALJ is required to make specific findings assessing the credibility of plaintiff's subjective complaints. *Ceguerra v. Secretary of HHS*, 933 F.2d 735 (9th Cir. 1991).  "An ALJ is not 'required to believe every allegation of disabling pain' or other non-exertional impairment," *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) (citation omitted).  In rejecting the complainant's

testimony, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater,* 81 F.3d 821, 834 (9th Cir. 1996) quoting *Varney v. Secretary of Health and Human Services,* 846 F.2d 581, 584 (9th Cir. 1988)).

In making this determination, the ALJ conducts a two-step analysis to assess subjective testimony. Under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom. *Tommasetti v. Astrue,* 533 F. 3d 1035, 1039 (9th Cir. 2008). If the first step is met and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* Factors the ALJ may consider in weighing a claimant's credibility include "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Id.* citing *Smolen v. Chater,* 80 F. 3d 1273 (9th Cir. 1996). If the ALJ's finding is supported by substantial evidence, the court "may not engage in second-guessing." *Thomas v. Barnhart,* 278 F.3d at 959.

In *Orn v. Astrue,* 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the pertinent standards for evaluating the sufficiency of an ALJ's reasoning in rejecting a claimant's subjective complaints:

> An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *See Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir.1989). However, to discredit a claimant's testimony when a medical impairment has been established, the ALJ must provide "'specific, cogent reasons for the disbelief.'" *Morgan,* 169 F.3d at 599 (quoting *Lester*, 81 F.3d at 834). The ALJ must "cit[e] the reasons why the [claimant's] testimony is unpersuasive." *Id.* Where, as here, the ALJ did not find "affirmative evidence" that the claimant was a malingerer, those "reasons for rejecting the claimant's testimony must be clear and convincing." *Id.*
>
> Social Security Administration rulings specify the proper bases for rejection of a claimant's testimony. . . An ALJ's decision to reject a claimant's testimony cannot be supported by reasons that do not comport with the agency's rules. *See* 67 Fed.Reg. at 57860 ("Although Social Security Rulings do not have the same force and effect as the statute or regulations, they are binding on all components of the Social Security Administration, ... and are to be relied upon as precedents in adjudicating cases."); *see Daniels v. Apfel,* 154 F.3d 1129, 1131 (10th Cir.1998) (concluding that ALJ's decision at step three of the disability determination was contrary to agency regulations and rulings

and therefore warranted remand).  Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Fair*, 885 F.2d at 603; *see also Thomas*, 278 F.3d at 958-59.

Here, the ALJ noted the following when evaluating Plaintiff's credibility:

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms: however, that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment. AR 13.

In support of this position, the ALJ summarizes the Plaintiff's testimony, as well as the medical evidence.  AR 14.  Plaintiff argues that the ALJ's statement offers no more than a conclusion that Plaintiff is not credible because it is inconsistent with the proposed RFC.  (Doc. 16 at pg. 8).  The Court disagrees with this broad conclusion, nonetheless, a review of the record demonstrates that the ALJ did not provide clear and convincing reasons for rejecting Plaintiff's testimony.

As a preliminary matter, Plaintiff's argument focuses mainly on the ALJ's failure to discuss how his ability to perform activities of daily living impact on his ability to work. However, the ALJ's reliance on Plaintiff's activities of daily living was proper.  AR 14.  As noted by Plaintiff, a claimant is not required to be completely incapacitated to qualify for disability benefits; nevertheless, daily home activities are relevant evidence to consider in a credibility analysis where such activities are transferable to the workplace.  *Fair v. Bowen*, 885 F.2d at 603. For example, in *Burch v. Barnhart*, the claimant was able to care for her own personal needs, cook for herself, clean and shop.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  The ALJ found her "quite functional."  *Id.*  In *Orteza v. Shalala*, 50 F.3d 748 (9th Cir. 1994) (per curiam), the ALJ's consideration of claimant's "various household chores such as cooking, doing the dishes, going to the store, and driving," was proper.  *Orteza*, 50 F.3d at 750.  Similarly, the ALJ correctly relied on the fact that Plaintiff attends college four days a week and is taking twelve

credits. *Matthews v. Shalala*, 10 F. 3d 678, 679-680 (9th Cir. 1993) (claimant attending classes three days a week weighed against allegations of disabling limitations).

Plaintiff testified that he shops for groceries, washes dishes daily, cooks three times a week, and attends classes full-time. AR 24, 50, 51. Although Plaintiff testified he needs to take breaks while at school, it appears that Plaintiff is "quite functional." *Burch v. Barnhart*, 400 F.3d 680, 681 (9th Cir. 2005). "If a claimant is able to perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent the claimant from working." *Fair v. Bowen*, 885 F.2d at 603.

Furthermore, the ALJ relied upon other valid factors to discredit Plaintiff's testimony. For example, although Plaintiff complained of back and hand pain, he did not seek treatment for those conditions for approximately a year.[7] "Evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding the severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (citing *Johnson v. Shalala*, 60 F. 3d 1428, 1434 (9th Cir. 1995)); *Tommasetti v. Astrue*, 533 F. 3d at 1039 (ALJ properly inferred that the claimant's pain was not as all-disabling as he reported in light of fact that the he did not seek an aggressive treatment program); *Meanel v. Apfel*, 172 F. 3d 1111, 1114 (9th Cir. 1999) (subjective pain complaints properly discredited where claimant complained of intense pain but only received minimal and "conservative" treatment); *Fair v. Bowen*, 885 F.2d at 603-04 (claiming severe conditions yet receiving minimal, conservative, or no treatment is a basis to reject claimant's testimony).

Despite these valid reasons, the ALJ's credibility determination is problematic because of her interpretation and reliance on the the examining and non-examining physicians' reports to discredit Plaintiff. As part of her analysis, the ALJ notes that:

---

[7] The Court notes that the ALJ indicates Plaintiff did not seek treatment for his hand or his back from February 2007 until August 2008. AR 14. However, records indicate that Plaintiff did seek treatment beginning in January 2008 until October 2008 for stiffness in his right hand and depression. While the difference in dates is an error, it is harmless error. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless" [citing *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir.1990)]).

In a July 2007 consultative examination, internist Dr. Hassan noted complaints of back and right hand pain and he diagnosed chronic back pain and right hand pain status post surgery. He concluded that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently, sit stand and/or walk 6 hours in an 8 hour day and can *frequently* climb, balance, kneel, crouch, crawl, stoop, and *finger, handle, and feel with the right hand*. I have given this opinion substantial weight because it is also consistent with the record as a whole.

In addition, the ALJ also relies on the state agency consultant's conclusions as follows:

The [s]tate agency medical consultants concluded that the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently and sit, stand, and/or walk 6 hours each in an eight hour day and *can occasionally handle, twist or finger with the right hand*. I have given this opinion substantial weight because it is consistent with the record as a whole.

Both opinions are clear that Plaintiff's RFC should be limited to light work which is the RFC the ALJ adopted.[8] However, the opinions are contradictory with regard to the other limitations that should be imposed. In particular, Dr. Hassan limited Plaintiff to *frequent fingering, handling, and feeling with the right hand*, while the state agency medical consultant limited Plaintiff to *occasional handling, twisting or fingering with the right hand*. AR 220, 239. This issue is critical because the VE testified that an individual who could perform light work, but who is limited to frequent fine and gross manipulation with the right hand could perform work as a manager, and sales assistant. AR 63-64. Conversely, the VE also testified that this same individual, who is limited to only occasional fine and gross manipulation with the right hand could not perform Plaintiff's past relevant work or any other work. AR 65. Thus, the issue of whether Plaintiff is limited to only occasional versus frequent fine manipulation in the right hand is determinative of disability.

Here the ALJ gave substantial weight to both reports, but the opinions are contradictory.[9] Plaintiff argues, and the Court agrees, that this violates SSR 96-8p, which states that the RFC

---

[8] Light work involves lifting more than 20 pounds at a time with frequent lifting or carrying 10 pounds. 20 CFR § 404.1567.

[9] Defendant has not specifically addressed Plaintiff's argument that the ALJ did not explain the contradiction because the Defendant contends there was no contradictory medical opinions. (Doc. 22, pg. 10). This is clearly not the case. Moreover, Defendant's brief is completely void of any reference to the state agency consultant's report, or the VE's testimony regarding Plaintiff's inability to work if he is limited to occasional fine and gross manipulation with the dominant right hand. AR 65, 235-239.

"must always consider and address medical source statements," and directs that if the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted." SSR 96-8p. Additionally, pursuant to regulation, the Commissioner must consider a state agency opinion. 20 CFR §§ 404.1527 and 416.927

In this case, the ALJ gave both opinions substantial weight but only incorporated Dr. Hassan's opinion into the RFC. She did not explain the discrepancy, or give any reasons why the RFC she adopted was correct in light of the conflicting opinions. The ALJ then relied on this factor as a basis to discredit Plaintiff. Although it appears the ALJ considered all of the evidence and determined the examining physician's report was more reliable and consistent, she did not articulate this reasoning. This Court may not accept post hoc explanations, *Barbato v. Commissioner of Social Sec. Admin.*, 923 F.Supp. 1273, 1276, n. 2 (C.D.Cal. 1996), and it may not speculate as to the ALJ's findings or the basis of the ALJ's unexplained conclusions. *Lewin v. Schweiker*, 654 F.2d 631, 634-35 (9th Cir. 1981). Thus, reliance on the objective medical evidence in this instance does not constitute clear and convincing reasons for rejecting Plaintiff's subjective testimony.

### *Sufficiency of the Administrative Record*

Plaintiff argues that the administrative record is incomplete and fails to contain all of the medical records from Raquel Espinoza, LCSW which the ALJ relied upon when determining Plaintiff does not suffer from a severe mental impairment. AR 270-349. Plaintiff contends that the ALJ erred in her assessment but since the records are not available, he is unable to assess this finding. In particular, Plaintiff asserts that every other page of these reports are unreadable and the case should be remanded so that a complete and accurate record can be evaluated.

In response, the Commissioner submitted a declaration from Patrick Herbst, Chief of Court Preparation and Review Branch 1 of the Office of Appellate Operations, Office of Disability Adjudication and Review. (Doc. 22-1). Mr. Herbst declares that the blank or illegible pages are likely the reverse of the preceding page and were inadvertently copied by a sensitive scanner during the scanning process. Doc. 22-1. Thus, the illegible pages are actually copies of preceding page that were erroneously left in the record.

Plaintiff has not submitted a reply, nor has he made any specific arguments with regard to the alleged errors the ALJ made regarding the mental condition classification.  As such, the Court concludes Plaintiff has withdrawn this argument.  Moreover, a review of the administrative record demonstrates that it is complete and accurate.

## REMAND

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."  In Social Security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a Social Security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that remand for further proceedings is proper due to the ambiguity of the ALJ's decision regarding the weight given to the medical reports as outlined above.  The Court leaves it to the ALJ's discretion to determine whether further testimony and evidence shall be received, or whether a written amendment to the order will be sufficient to correct this deficiency.

///
///
///
///
///
///

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence. The case is therefore REVERSED and REMANDED to the ALJ for further proceedings consistent with this opinion.  The clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff, Francisco Rodriguez, and against Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

**Dated:   March 21, 2011**               /s/ **Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE